UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

Approximately 3879.16242937 bitcoin, seized from Bitcoin address bc1q7rhc02dvhmlfu8smywr9mayhdph85jlpf6paqu,

Defendant.

Case No.: 21-cv-02103-AJB-JLB

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AS TO ALL POTENTIAL CLAIMANTS EXCEPT SA REINSURANCE LTD**

**(Doc. No. 18)**

Before the Court is the United States of America's ("the Government") motion for default judgment in this in rem civil action to forfeit approximately 3879.16242937 bitcoin, seized from Bitcoin address bc1q7rhc02dvhmlfu8smywr9mayhdph85jlpf6paqu ("Defendant Bitcoin"). (Doc. No. 18.) The Court set a briefing schedule for the motion. None of the potential claimants, including SA Reinsurance Ltd. and Rei Ishii, have opposed the motion. For the reasons set forth, the Court **GRANTS** the Government's motion for default judgment.

## I. BACKGROUND

The Government filed a verified civil forfeiture Complaint against Defendant Bitcoin on December 20, 2021. (Doc. No. 1.) Therein, the Government alleges that Defendant Bitcoin is subject to forfeiture as property that constitutes or was derived from proceeds traceable to violations of 18 U.S.C § 1343 (wire fraud) and 18 U.S.C § 2314 (transferring or transmitting in foreign commerce money that was stolen or taken by fraud), as well as property involved in violations of 18 U.S.C § 1956 (laundering in monetary instruments) and 18 U.S.C § 1957 (transacting in criminal proceeds). (*Id.* at 1–2.)[1]

According to the Complaint, Rei Ishii ("Ishii") is a dual national of Japan and the United States and a former employee of Sony Life Insurance Company Ltd. ("Sony Life"). (*Id.* at 5–6.) During his employment with Sony Life, Ishii was responsible for exchanging large sums of Japanese Yen for U.S. Dollars and transferring those funds from a Sony Life Citibank account in Bermuda to Sony Life's bank accounts in Japan. (*Id.* at 6.) The Government claims that in connection with those transactions, Ishii engaged in a scheme to defraud Sony Life, Citibank, and others, with the intent to convert Sony Life's funds to his own use. (*Id.*) Specifically, in May 2021, Ishii, without authorization and through misrepresentations, instructed Citibank to transfer $154,932,103.17 from a Sony Life Citibank account in Bermuda to an account that Ishii controlled at Silvergate Bank in La Jolla, California. (*Id.*) To conceal the nature, location, source, ownership, and control of the proceeds of his fraud and embezzlement crimes, Ishii exchanged the $154,932,103.17 for approximately 3,879.16 bitcoin cryptocurrency and transferred the cryptocurrency to a secure and encrypted cold wallet having the address bc1q7rhc02dvhmlfu8smywr9mayhdph85jlpf6paqu. (*Id.*)

In early December 2021, Defendant Bitcoin was seized pursuant to a warrant issued by Magistrate Judge Mitchell D. Dembin. The Government filed a verified civil forfeiture Complaint a few weeks later. The Court appointed the Federal Bureau of Investigations

[1] The pinpoint page citations refer to the CM/ ECF-generated page numbers at the top of each filing.

("FBI") as interim custodian of Defendant Bitcoin, and the Clerk of Court issued an in rem warrant for Defendant Bitcoin's arrest on December 22, 2021. (Doc. Nos. 3, 4.)

In January and February 2022, the Government sent a copy of the Complaint and Notice of Judicial Forfeiture Proceedings to known potential claimants, SA Reinsurance Ltd. ("SARe") and Ishii, respectively. The Government also posted notice of this forfeiture action on an official government website. SARe timely filed a verified claim, asserting a claim to, and interest in, all of Defendant Bitcoin. (Doc. No. 10.) Through agreement with the Government, SARe has not yet filed an answer to the Complaint. (Doc. No. 18-1 at 7.) No other person or entity has filed a claim or an answer in this action, and the time to do so has passed.

On February 25, 2022, the Government filed a motion for an order authorizing the interlocutory sale of Defendant Bitcoin.[2] (Doc. No. 13.) To preserve the property's value, the Court granted the motion and authorized the Government to liquidate Defendant Bitcoin and exchange it for U.S. dollars to be held in the United States Department of Justice's Seized Asset Deposit Fund pending resolution of this civil forfeiture case. (Doc. No. 14.) The net proceeds of the liquidation, less fees and costs, was $161,660,054.20 ("Substitute Res"). (Doc. No. 18-1 at 3.)

On March 15, 2022, the Government filed a request for a clerk's entry of default as to all potential claimants except SARe, and the Clerk entered such default the following day. (Doc. No. 16.) The Government thereafter filed the instant motion, seeking a default judgment forfeiting the interest of all potential claimants in the world, except that of SARe, in Defendant Bitcoin, now the Substitute Res. (Doc. No. 18.) This Order follows.

## II. LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R Civ. P. 55(a). Upon entry of the party's default, the

[2] The Government's motion included a stipulation signed by SARe (the sole claimant) and Ishii (the sole known potential additional claimant).

factual allegations in the plaintiff's complaint, except those relating to damages, are deemed admitted. *E.g.*, *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Applications to the court for a default judgment are governed by Federal Rule of Civil Procedure 55(b)(2). The entry of default judgment is within the trial court's discretion. *See Taylor Made Golf Co. v. Carsten Sports*, Ltd., 175 F.R.D. 658, 660 (S.D. Cal. 1997). In determining whether to enter default judgment, the court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Where the amount of damages claimed is a liquidated sum or capable of mathematical calculation, the court may enter a default judgment without a hearing. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).

## III. DISCUSSION

With its motion for default judgment, the Government seeks to terminate and default all interests to the Substitute Res, except that of SARe. The Government explains that it requests entry of such judgment so it may enter into a settlement agreement with SARe, recognizing its interest in the Substitute Res, without fear that any other claimant may one day assert a belated claim to the property. The Government indicates that it has satisfied the procedural requirements governing civil forfeiture and argues that the *Eitel* factors support its request for default judgment in this case. As analyzed below, the Court agrees.

### A. Civil Forfeiture Procedural Requirements

Any property subject to forfeiture to the United States may be seized in the manner set forth in 18 U.S.C. § 981(b). *See* 21 U.S.C. § 881(b). Pursuant to 18 U.S.C. § 981 (b)(2)(A), a seizure may be made without a warrant if a complaint for forfeiture has been filed in district court and the court has issued an arrest warrant in rem pursuant to the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Supplemental Rule G includes several judicial authorization, process, and notice requirements. The government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited with reasonable particularity, identifies the statute under which the forfeiture action is brought, and states sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Supp. R. G(2)(a)–(f). The clerk must then issue a warrant to arrest the property if it is in the government's possession, custody, or control, and process must be executed on the property. Supp. R. G(3)(b)–(c). The government is required to give notice to potential claimants by publication and by sending direct notice of the pending forfeiture action to any person who reasonably appears to be a potential claimant. Supp. R. G(4)(a)–(b).

Here, the Court finds that the Government has satisfied the procedural requirements necessary to bring forth this forfeiture action. In compliance with Rule G(2), the Government filed a verified Complaint. (Doc. No. 1.) The Complaint states the grounds for jurisdiction and venue, and describes the property being forfeited as approximately 3879.16242937 bitcoin, seized from a specific Bitcoin address: bc1q7rhc02dvhmlfu8smywr9mayhdph85jlpf6paqu. (*Id.* at 1–2.) The Complaint also asserts that Defendant Bitcoin is subject to forfeiture as property that constitutes or was derived from proceeds traceable to violations of 18 U.S.C §§ 1343 and 2314, as well as property involved in violations of 18 U.S.C §§ 1956 and 1957. (*Id.* at 1–2.) The Court further finds that the Complaint contains ample factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. (*See id.* at 2–15.)

Additionally, consistent with Rule G(3) and upon the Court's Order appointing the FBI as interim custodian, the Clerk of Court issued an in rem warrant for arrest of Defendant Bitcoin, commanding the FBI to detain the property in its custody, along with instructions on process. (Doc. Nos. 3, 4.) And as required by Rule G(4)(a), the government posted notice of the forfeiture action on an official government website

(www.forfeiture.gov) for at least 30 consecutive days, beginning on January 8, 2022 (Doc. No. 18-3 at 3.) Lastly, as mandated by Rule G(4)(b), the Government sent notice to known potential claimants, SARe and Ishii, (*Id.* at 2.) The Government sent a copy of the Complaint and Notice of Judicial Forfeiture Proceedings to SARe on January 5, 2022, and to Ishii on February 2, 2022. (*Id.*) For these reasons, the Court finds that the Government has complied with the requirements necessary to proceed with this action.

**B. *Eitel* Factors**

Next, to determine whether a motion for default judgment should be granted, the Court considers the *Eitel* factors. *See* 782 F.2d at 1471–72. First, as for the "possibility of prejudice to the plaintiff" factor, the Court finds that denying the motion would unduly prejudice the Government because it would be required to litigate this action even though no potential claimants have appeared to contest this forfeiture. *See United States v. Approximately $28,000 in U.S. Currency*, No. 09-5377 SC, 2010 WL 1340110, at *4 (N.D. Cal. Apr. 5, 2010) (pointing out prejudice where the government would have to expend further time and effort in an action that has no opposing party).

Second, the sufficiency and substantive merits of the Government's claims also weigh in favor of entering the requested default judgment. To prevail in an action under 18 U.S.C. § 983(c), the government must prove by a preponderance of evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). If the government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense or was involved in the commission of a criminal offense, the government must establish a substantial connection between the property and the offense. *Id.* § 983(c)(3).

Here, the Government claims that Defendant Bitcoin, now the Substitute Res, is subject to forfeiture on the theory that it constitutes or was derived from proceeds traceable to violations of 18 U.S.C § 1343 (wire fraud) and 18 U.S.C § 2314 (transferring or transmitting in foreign commerce money that was stolen or taken by fraud), as well as property involved in violations of 18 U.S.C § 1956 (laundering in monetary instruments) and 18 U.S.C § 1957 (transacting in criminal proceeds). (Doc. No. 1 at 1–2.) The Court

finds that the factual allegations in the Complaint, taken in its entirety, satisfies the Government's burden of proving a substantial connection between Defendant Bitcoin and Ishii's wire fraud and money laundering scheme.

Assuming the truth of the factual allegations, the Complaint demonstrates that Ishii, a former employee of Sony Life responsible for exchanging large sums of money between Sony Life's bank accounts, engaged in a scheme to defraud Sony Life, Citibank, and others by conducting—without authorization and through misrepresentations—a transfer of $154,932,103.17 to his bank account in La Jolla. (*Id.* at 6.) Ishii then exchanged the $154,932,103.17 for approximately 3,879.16 bitcoin cryptocurrency and transferred the units to a secure and encrypted cold wallet to conceal the nature, location, source, ownership, and control of his fraud and embezzlement proceeds. (*Id.*) The Complaint contains ample detail on what misrepresentations Ishii made to convert the funds, when he made them, and how he made them. (*Id.* at 7–12.) Furthermore, the Complaint explains how Defendant Bitcoin is traceable to the money that Ishii stole and involved in his money laundering. (*Id.* at 13–14.) Thus, the Court finds the sufficiency and merits of the Government's claims favor entering default judgment.

Third, regarding the "the sum of money at stake," the Court acknowledges that $161,660,054.20 (the preserved value of Defendant Bitcoin), is not insubstantial. However, as discussed, the Government has sufficiently demonstrated that this sum of money was stolen or taken by wire fraud and involved in money laundering transactions, in violation of federal law. Fourth, concerning "the possibility of a dispute concerning the material facts," there is no possibility of a dispute because no claim or answer has been filed by any potential claimants except SARe. The record contains no dispute or objections to the Government's allegations or evidence.

Fifth, as to "whether the default was due to excusable neglect," there is no evidence that the default of all other claimants except for SARe was the result of excusable neglect. Despite the Government's compliance with the notice requirements under the relevant rules, no potential claimants other than SARe have appeared. *See United States v.*

*Approximately $72,000 in U.S. Currency*, No. C 08-1305 JCS, 2009 WL 506866, at *4 (N.D. Cal. Feb. 27, 2009) ("[T]here is no evidence that default was due to excusable neglect given that . . . Plaintiff provided adequate service and notice to the parties known to have an interest in the property."). Finally, although the Court should decide cases on the merits, the failure of Ishii or any other potential claimant to file an answer "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Accordingly, because the Government has complied with the necessary procedural requirements in forfeiture proceedings, and because the *Eitel* factors weigh in favor of default judgment, the Court finds default judgment and forfeiture of the Substitute Res appropriate.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Government's request for an entry of default judgment condemning and forfeiting in favor of the United States the interests of Rei Ishii and all other potential claimants in the world—except that of SA Reinsurance Ltd.—as to Defendant Bitcoin, now the Substitute Res. The Clerk of Court is instructed to enter judgment accordingly.

**IT IS SO ORDERED**.

Dated: April 18, 2022

Hon. Anthony J. Battaglia
United States District Judge