UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>Approximately 3879.16242937 bitcoin, seized from Bitcoin address bc1q7rhc02dvhmlfu8smywr9mayhdph85jlpf6paqu,<br>Defendant. | Case No.: 21-cv-2103-AJB (JLB)<br>**ORDER FOR ENTRY OF JUDGMENT** |

Upon consideration of both (1) the Plaintiff United States' Stipulated Motion for Entry of Judgment Awarding all Right, Title, and Interest in the Defendant Substitute Res to the Sole Claimant, SA Reinsurance, Ltd. ("SA Reinsurance") and (2) the Stipulation for Compromise Settlement between the United States and SA Reinsurance, the Court finds:

1. On or about December 1, 2021, a duly authorized agent of the Federal Bureau of Investigation ("FBI"), with the assistance of Japanese law enforcement authorities, seized and arrested the Defendant bitcoin, described as:

**Approximately 3879.16242937 bitcoin, seized from Bitcoin address bc1q7rhc02dvhmlfu8smywr9mayhdph85jlpf6paqu ("Defendant BTC").**

2. Pursuant to the Court's Order of December 21, 2021, appointing the FBI as interim custodian of the Defendant BTC, the FBI took possession and custody of the Defendant BTC.

3. On December 20, 2021, the United States filed a verified complaint in this civil forfeiture action in the United States District Court for the Southern District of California against the Defendant BTC. (the "Complaint") The Complaint alleges that the Defendant BTC:

a. Was seized from a Bitcoin address controlled by an individual named Rei Ishii ("Ishii"), Complaint, ¶ 7;
b. Constitutes or was derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 (wire fraud) and 2314 (transferring or transmitting in foreign commerce money that was stolen or taken by fraud);
c. Was involved in money laundering transactions committed in violation of Title 18, United States Code, Section 1956 (Laundering Monetary Instruments) and Title 18, United States Code, Section 1957 (Transacting in Criminal Proceeds); and
d. Is therefore subject to civil forfeiture under Title 18, United States Code, Section 981(a)(1)(A) and (a)(1)(C). Complaint, ¶¶ 1, 7.

4. The Complaint further alleges as follows:

a. Ishii, while employed at Sony Life, obtained by fraud and embezzled approximately $154,932,103.17 in funds belonging to Sony Life. *Id.*, ¶ 21.
b. During 2020, following Sony Life's acquisition of two other insurance companies, Sony Life initiated several transactions to exchange large sums of Japanese Yen for U.S. Dollars, and to transfer those funds from a Citibank account in Bermuda to bank accounts that Sony Life held in Japan. *Id.*, ¶ 19.
c. Beginning no earlier than December 15, 2020, and continuing through at least May 27, 2021, Ishii, who was one of the Sony Life employees

responsible for conducting those currency-exchange and fund-transfer transactions for Sony Life, engaged in a scheme to defraud Sony Life, Citibank, and others, in connection with certain of those transactions. Ishii engaged in that scheme with the intent to surreptitiously and unlawfully convert to his own use some of the Sony Life funds that were the subject of these transactions. Ishii's fraud and embezzlement scheme involved material misrepresentations and the concealment of material facts. *Id.*, ¶ 20.

d. Between on or about May 18 and May 20, 2021, and as a part of this scheme, Ishii falsely, fraudulently, and without authorization of his employer, instructed Citibank, one of the banks facilitating Sony Life's international funds transfers: (a) to transfer 16,962,800,068 Japanese Yen internationally to a Bermuda-based Citibank account (#xxxx9700) and then (b) to exchange the 16,962,800,068 Japanese Yen for 154,932,103.17 United States Dollars. *Id.*, ¶¶ 22, 29-38.

e. Although Ishii conducted these transfer and currency-exchange transactions in a manner that appeared consistent with Sony Life's funds-transfer plan, Ishii had in fact already obtained control of these funds by fraud. Specifically, Ishii had made these international transfers of Sony Life funds during the period of May 18-May 20, 2021, on the false and fraudulent pretense that Ishii's supervisor K.Y. had approved the transfers, via a required dual-authentication funds-transfer process, when, in fact, K.Y. had not done so. *Id.*, ¶¶ 29-38.

f. Ishii then falsely, fraudulently, and without Sony Life's authorization, instructed Citibank to transfer the $154,932,103.17 that Ishii had obtained by fraud and had embezzled from a corporate Citibank account in Bermuda to an account that Ishii controlled at Silvergate Bank in La Jolla, California,

within the Southern District of California. Ishii fraudulently opened that account using the name of his supervisor K.Y. *Id.*, ¶¶ 22, 39-45.

g. The Silvergate Bank account to which Ishii directed those $154,932,103.17 in funds, which Ishii had obtained by fraud and embezzlement, is associated with Coinbase, Inc. ("Coinbase"), a cryptocurrency company. *Id.*, ¶ 23.

h. As a part of his scheme to defraud Sony Life, Ishii opened that Coinbase account associated with the Silvergate Bank account on the materially false and fraudulent representation, which involved use of international and interstate wires, that the Coinbase account belonged to Sony Life's subsidiary, SA Reinsurance, and that Ishii's supervisor, K.Y., was the individual associated with the account. *Id.*, ¶ 24.

i. Ishii then engaged in money laundering transactions involving the $154,932,093.17 in proceeds of his fraud and embezzlement scheme. Specifically, Ishii caused Coinbase to exchange the $154,932,093.17 on deposit at Silvergate Bank for bitcoin cryptocurrency and then to transfer the corresponding 3879.16331587 bitcoin (BTC) to a secure and encrypted "cold wallet" having the address bc1q7rhc02dvhmlfu8smywr9mayhdph85jlpf6paqu, which belonged to Ishii, all with the intent to conceal the nature, location, source, ownership, and control of those proceeds of his fraud and embezzlement crimes. (The $10 reduction in the amount of funds described herein, on information and belief, reflects transaction fees.) *Id.*, ¶ 25.

j. On or about December 1, 2021, with the assistance of Japanese law enforcement authorities, FBI seized the Defendant 3879.16242937 BTC and transferred it to FBI-San Diego's bitcoin wallet, located in the Southern District of California. (The slight reduction in the amount of bitcoins as described herein was the result of fees paid, usually on a transactional basis.) *Id.*, ¶ 26.

5. On January 5, 2022, the United States sent Notice of Judicial Forfeiture Proceedings and a copy of the Verified Complaint for Forfeiture by email and by Federal Express to SA Reinsurance through its attorney at her address of record:

| Name and Address | Tracking No. | Result |
|---|---|---|
| SA Reinsurance Ltd.<br>c/o Mala Ahuja Harker<br>Friedman Kaplan Seiler<br>& Adelman LLP<br>7 Times Square, 28th Floor<br>New York, NY 10036-6516 | 7756 7141 3019 | Delivered on 1/7/22 |

6. On February 2, 2022, the United States caused the Complaint and Notice of Judicial Forfeiture Proceedings, in both English and Japanese, to be served on Potential Claimant Rei Ishii at the following address:

| Name and Address | Result |
|---|---|
| Rei Ishii<br>Tokyo Metropolitan Police Department, Oji Police Station<br>3-22-22 Oji, Kita-Ward<br>Tokyo 114-0002 | Delivered on 2/2/22 |

7. On January 6, 2022, Claimant SA Reinsurance, a wholly owned subsidiary of Sony Life, filed a timely and valid Verified Claim to the Defendant Property Seized for Forfeiture.

8. Beginning on January 8, 2022, and continuing through February 6, 2022, the United States posted notice of this civil forfeiture action on an official government internet website, www.forfeiture.gov, for at least 30 consecutive days, as required by Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

9. On February 25, 2022, the United States filed a motion for an order authorizing interlocutory sale of the Defendant BTC. Both Claimant SA Reinsurance and potential claimant Rei Ishii stipulated to the motion.

10. On March 1, 2022, this Court granted the United States' stipulated motion for interlocutory sale. Subsequently, the Defendant cryptocurrency was liquidated and the net proceeds of the liquidation, less fees and costs, in the amount of $161,660,054.17 ("Substitute Res") was deposited into the DOJ Seized Asset Deposit Fund.

11. As of March 15, 2022, the sole claimant in this action was SA Reinsurance. By that date, the time for Potential Claimant Ishii and any other potential claimant to file a claim had expired and no other person or entity had filed a claim to the Defendant BTC.

11. Accordingly, on March 15, 2022, the United States filed a Declaration of and Request for Clerk's Entry of Default as to All Potential Claimants Except SA Reinsurance Ltd.. A Clerk's Entry of Default was issued on March 16, 2022.

12. On March 18, 2022, the United States filed its Notice of Motion and Motion for Judgment by Default as to All Potential Claimants Except SA Reinsurance Ltd. The United States brought that motion for the purpose of forfeiting to the United States the potential interests of all persons and entities in the world in the Defendant Substitute Res, other than that of Claimant SA Reinsurance in the Defendant Substitute Res, so that the United States could then enter into an agreement with SA Reinsurance (a) recognizing Claimant SA Reinsurance's superior interest in the Defendant Substitute Res; and (b) stipulating to entry of a Judgment declaring that all right, title, and interest in the Defendant Substitute Res belongs to Claimant SA Reinsurance, and so that the United States could enter into that agreement with SA Reinsurance without fear that any other claimant might one day also assert a belated claim to the Defendant Substitute Res.

13. On April 18, 2022, the Court granted the Government's Motion for Default Judgment as to All Potential Claimants Except SA Reinsurance Ltd. On April 18, 2022, the Clerk entered Default Judgment condemning and forfeiting in favor of the United States the interests of Potential Claimant Ishii and all other potential claimants in the world—except SA Reinsurance—as to the Defendant Substitute Res.

14. The Plaintiff United States and Claimant SA Reinsurance have entered into a Stipulation for Compromise Settlement, which the United States has filed with its

Stipulated Motion for Entry of Judgment Awarding all Right, Title, and Interest in the Defendant Substitute Res to the Sole Claimant, SA Reinsurance.

15. Under the terms of the Stipulation for Compromise Settlement, the Parties have stipulated and agreed, among other things, that:

a. Claimant SA Reinsurance was and is the rightful owner of both: (1) the approximately $154,932,103.17 in funds that Ishii obtained by fraud and embezzlement; and (2) the Citibank account from which Ishii fraudulently transferred and embezzled those funds;

b. Claimant SA Reinsurance, based on its warranty and representation to this effect, is the sole owner of the property used to obtain the original Defendant BTC and is the sole owner of the Defendant Substitute Res and no other person or entity, including any entity owned in whole or in part by Sony Life (other than Claimant SA Reinsurance), has an interest in the original Defendant BTC or the Defendant Substitute Res;

c. Under the unique facts of this case and Claimant SA Reinsurance's warranties and representations, Claimant SA Reinsurance's property interest in the Defendant Substitute Res is superior to the forfeiture interest of the United States in the Defendant Substitute Res;

d. The Court should enter judgment awarding all right, title, and interest in the Substitute Res to Claimant SA Reinsurance;

e. Upon the Court's entry of judgment awarding all right, title, and interest in the Substitute Res to Claimant SA Reinsurance, the United States has agreed to return the Defendant Substitute Res, namely the sum of approximately $161,660,054.17, to Claimant SA Reinsurance via a payment, to an appropriate financial account to be identified by Claimant SA Reinsurance, which shall be made via the United States Treasury;

f. The Debt Collection Improvement Act of 1996, as codified at 31 U.S.C. § 3716 and administered through the Treasury Offset Program ("TOP"), requires the United States Treasury to offset federal payments to collect certain delinquent debts owed by a payee to the United States, a United States agency, or a state, and accordingly, that the amount to be returned to Claimant SA Reinsurance under this settlement agreement may be reduced by the amount of any such delinquent debt that the United States Treasury is required to collect through TOP;

g. Each party shall bear its own costs, attorney's fees, and expenses, and Claimant SA Reinsurance expressly has agreed that it shall not be deemed a prevailing party in this action for purposes of costs, attorney's fees, and expenses;

h. Claimant SA Reinsurance has waived, effective upon its receipt of the full amount of the payment, any and all claims that it has or might have against the United States of America, the United States Department of Justice, the United States Marshal Service, the FBI, and all agents, officers, and employees thereof (hereinafter the "Released Parties"), relating to the seizure or forfeiture of the Defendant BTC and Substitute Res, including any claims for lost profits or interest;

i. Claimant SA Reinsurance has agreed to hold the Released Parties harmless from any and all future claims of third parties pertaining to the Defendant BTC, Substitute Res, or both; and

j. This Court shall retain jurisdiction in this cause for the purpose of enforcing the terms of this Final Judgment.

15. The United States has also requested that the Court enter, and Claimant SA Reinsurance has stipulated to entry of, a certificate of reasonable cause under 28 U.S.C.

§ 2465(a)(2) as to the United States' seizure and arrest of the Defendant BTC and commencement and prosecution of this forfeiture action.

16. Finally, the United States has moved, under Rule 58 of the Federal Rules of Civil Procedure, for entry of judgment awarding all right, title, and interest in the Defendant Substitute Res, namely the sum of approximately $161,660,054.17, to Claimant SA Reinsurance.

//

Based on the above findings, the parties' stipulations, and the files and records of the Court, it is hereby ORDERED AND ADJUDGED:

1. The Court ADOPTS the Parties' Stipulation for Compromise Settlement as its findings of fact.

2. The Court GRANTS the Plaintiff United States' Stipulated Motion for Entry of Judgment Awarding all Right, Title, and Interest in the Defendant Substitute Res to the Sole Claimant, SA Reinsurance, Ltd.

3. The Court ORDERS that the Clerk of Court enter Judgment awarding all right, title, and interest in the Defendant Substitute Res to Claimant SA Reinsurance.

4. Upon Entry of this Judgment, the United States shall promptly return the dollar value of the Defendant Substitute Res, namely a sum equal to approximately $161,660,054.17, to Claimant SA Reinsurance via a payment made by the United States Treasury to an appropriate financial account to be identified by Claimant SA Reinsurance.

5. Each party shall bear its own costs, attorney's fees, and expenses.

6. Based upon the allegations set forth in the Complaint filed on December 20, 2021, and the Parties' Stipulation for Compromise Settlement, the Court hereby ENTERS this Certificate of Reasonable Cause under 28 U.S.C. § 2465, and FINDS that the United States had reasonable cause for the seizure and arrest of the Defendant BTC and for the commencement and the prosecution of this forfeiture action against the Defendant BTC and then the Defendant Substitute Res.

7. This Court shall retain jurisdiction in this cause for the purpose of enforcing the terms of this Order.

IT IS SO ORDERED.

Dated: July 12, 2022

Hon. Anthony J. Battaglia
United States District Judge